UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JASMINE DOVE-ANNA GRAHAM, SIRCHARLES MARC-ANTHONY JONES, and SAVANNAH JADE-MARIE MULLEN,<br><br>                Plaintiff,<br><br>    v.<br><br>PORTLAND PUBLIC SCHOOL DISTRICT #1J, JOLLEEN PATTERSON, KARL LOGAN, CAROL SMITH, KRISTIE CUNIN, T.J. FULLER, RUTH TUCKER, TAMMY JACKSON, and CARLA RANDALL<br><br>                Defendants. | No. 3:13-cv-00911-AC<br><br>FINDINGS AND RECOMMENDATION |

ACOSTA, Magistrate Judge:

       Jasmine Dove-Anna Graham ("Graham") filed this lawsuit in May 2013, individually and on behalf of her two children Sircharles Marc-Anthony Jones ("Sircharles") and Savannah Jade-

FINDINGS & RECOMMENDATION - 1                                        [RMD]

Marie Mullen ("Savannah") (collectively "Plaintiffs"). She brings suit against Portland Public School District #1J, Jolleen Patterson, Karl Logan, Superintendent Carol Smith, Christie Cunin ("Cunin"), T.J. Fuller, Ruth Tucker, Tammy Jackson, and Carla Randall (collectively "Defendants") for race discrimination, intentional infliction of emotional distress ("IIED"), defamation, and violations of the Individuals with Disabilities in Education Act ("IDEA"). Defendants moved to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). After reviewing the parties' briefs, the court concludes Defendants' motion to dismiss should be granted, and Plaintiffs' claims dismissed.[1]

*Factual Background*

Graham and her two children, Sircharles and Savannah, reside in Portland, Oregon. (First Amended Complaint ("Compl.") at 1.)[2] Although Graham identifies herself as "biracial" and claims to appear "light-skinned with a unique and attractive mix of ambiguous physical features, none of which reveal any evidence of her African-American ancestry," she alleges Sircharles and Savannah inherited their father's darker skin tone and "African American . . . features." (Compl. at ¶ 3.)

In March 2012, Graham enrolled her children at Rigler School ("Rigler"), a kindergarten-through-eighth-grade school in the Portland School District. (Compl. at ¶ 10.) At that time, Sircharles was in fifth grade and Savannah in first grade. (Compl. at ¶ 10.) Shortly after enrollment, both children began experiencing problems at school. (Compl. at ¶ 14.)

---

[1] The court concludes that oral argument is unnecessary and, pursuant to Local Rule 7-1(d), will decide Defendants' motions without hearing oral argument.

[2] Not all paragraphs in the First Amended Complaint are numbered as required by FED. R. CIV. P. 10. Therefore, although the court primarily cites certain paragraphs in the complaint, information found in non-numbered paragraphs is cited to the page from which the information derives.

FINDINGS & RECOMMENDATION - 2                                                              [RMD]

Sircharles suffers from oppositional defiant disorder ("ODD") and attention deficit hyperactivity disorder ("ADHD"). (Compl. at 1.) Partly because of these disabilities, Sircharles has behavior problems at school. (Compl. at ¶ 6.) Graham has on several occasions requested the school administer a special-education evaluation and implement an Individualized Education program ("IEP") as required by the IDEA. (Compl. at ¶ 4.) Instead of evaluating Sircharles, teachers and administrators told Graham that Sircharles was "not a suitable candidate" for a special-education evaluation. (Compl. at ¶5.) Graham and Rigler administrators eventually came to an agreement that Graham would complete all the necessary paperwork, and the school would evaluate Sircharles the following school year. (Compl. at ¶ 5.) However, Graham never received the paperwork and the school never evaluated Sircharles. (Compl. at ¶ 5.) Sircharles was eventually expelled from Rigler for behavior which Graham alleges derived from his disabilities. (Compl. at 4.)

The children allegedly faced constant harassment by their classmates and teachers. (Compl. at ¶ 22.) Graham alleges Sircharles was constantly bullied and ridiculed, but school staff refused to take any action. On one occasion, Assistant Principle Fuller "rough[ed] . . . up [Sircharles] by his clothes, and curs[ed] at him" after a field trip. (Compl. at ¶ 14.) Moreover, Sircharles and Savannah were insulted repeatedly by classmates, and the school failed to act even when the children were called "niggers, black q-tips, and burnt pieces of toast." (Compl. at ¶ 32.) Savannah was ridiculed for her weight and the appearance of her hair, but school officials did not respond or inform Graham of the problems. (Compl. at ¶ 11.) On one occasion, Savannah teased another child about her backpack. (Compl. ¶ 27.) The following day, the other child's mother came to Rigler with her child, cornered Savannah, and verbally assaulted her. (Compl. at ¶ 27.) The school again took no action against the student or the parent, and did not inform Graham, who learned of the incident from her

daughter. (Compl. at ¶ 27.)

Graham alleges she also faced disparate treatment by Defendants. When she first arrived at Rigler to enroll her children, Rigler staff greeted her in Spanish and gave her Spanish-language enrollment forms. (Compl. at ¶ 10.) After Graham informed Rigler staff she was not Hispanic or a Spanish speaker, the school staff apologized. (Compl. at ¶ 10.) Graham continually expressed concern regarding the racism her children faced at school, but the Rigler administration was not receptive to her complaints. (Compl. at 10-11.) In fact, she developed a contentious relationship with the administrators at Rigler. She alleges that, after she complained about Sircharles's treatment at school, the principal of Rigler made disparaging remarks to Rigler teachers and administrators about Graham's fitness as a parent. (Compl. at 4-5.)

*Procedural Background*

Graham filed this matter pro se in May 2013. (Dkt. No. 1.) In part because Graham sought relief on behalf of her minor children, the court attempted on five occasions to procure pro bono counsel to represent her and her children. (Dkt. Nos. 7, 13, 18, 20, 29.) Each appointment was declined. (Dkt. Nos. 10, 15, 19, 24, 39.) Defendants moved to dismiss in October 2013, but Graham did not file a response. On October 22, 2013, the court held a status conference at which it advised Graham on her options moving forward with her claims and granted her leave to file an amended complaint. (Dkt. No. 54.)

Graham filed her First Amended Complaint pro se in April 2014. (Dkt. No. 2.) In her First Amended Complaint, Graham specifically articulates claims for racial discrimination and IIED. However, in the body of her complaint, Graham makes allegations that Defendants violated the IDEA and made defamatory statements about her. Graham is pro se, so the court will liberally

FINDINGS & RECOMMENDATION - 4                                                                [RMD]

construe her claims. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (construing liberally a pro se plaintiff's claims). On May 19, 2014, Defendants again moved to dismiss for failure to state a claim. (Dkt. No. 60.) In response, Graham filed a "Notice of Documents to be Considered," which consists of documents related to Portland Public School Policy. (Dkt. No. 64.) Defendants filed a "Response to Plaintiff's Notice of Documents to be Considered," which the court treats as their reply. (Dkt. No. 65.)

*Discussion*

Defendants move to dismiss all of Graham's claims. They argue that Graham's claims brought on behalf of her children fail because she is not an attorney, and she cannot represent her children in a legal matter. Further, they argue Graham fails to state a claim for her own claims because she: (1) improperly asserts her children's claims as her own; (2) failed to provide timely notice of her claims under the Oregon Tort Claims Act (the "OTCA") with regard to her state-law claims; (3) failed to exhaust her administrative remedies under the IDEA; and (4) "fails to allege facts sufficient to support the elements of her claims . . . ." The court will address each of Defendants' arguments in turn.

I. Graham's Representative Claims on Behalf of Her Children

It is unclear from Graham's complaint which claims she intended to bring on behalf of her children. The court construes her First Amended Complaint to state one count of "[d]iscrimination based on race," one count of IIED on behalf of both Sircharles and Savannah, and one claim for violation of the IDEA on behalf of Sircharles. Defendants contend all of these claims should be dismissed because Graham, as a pro se litigant, cannot bring suit on behalf of her children. Graham does not address Defendants' argument in her Notice of Documents to be Considered.

Although a non-attorney litigant may represent himself or herself pro se in a civil matter, "that privilege is personal to him" or her and does not entitle the non-attorney to represent others in legal matters. *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987). This rule has broad application, and courts have held that even those vitally involved in the represented party's affairs may not serve as legal representation. *Id.* (holding the trustee of a trust could not bring a pro se action on behalf of the trust). The rule against vicarious pro se representation also applies when parents attempt to bring claims on behalf of their children. *Johns v. County of San Diego*, 114 F.3d 874, 876-77 (9th Cir. 1997).

In *Johns v. County of San Diego*, the Ninth Circuit confronted procedural facts similar to the matter now before this court. There, a pro se party sued San Diego County under 42 U.S.C. § 1983, both individually and on behalf of his son. *Id.* at 876. The plaintiff also brought a claim on behalf of an acquaintance, who executed a general power of attorney in favor of the pro se plaintiff. *Id.* The district court dismissed each of the plaintiffs' claims, and the Ninth Circuit affirmed in part the district court's decision. *Id.* With respect to the claims brought on behalf of the acquaintance, the court relied on *C.E. Pope Equity Trust* and reasoned that "[w]hile a non-attorney may appear pro se on his own behalf, 'he has no authority to appear as an attorney for others than himself.'" *Id.* (original brackets omitted). The court then analyzed whether the plaintiff could bring vicarious claims on behalf of his minor son. *Id.* Ultimately, the court agreed with other circuits in holding "that a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Id.* (quoting *Osei-Afriyie v. Medical College*, 937 F.2d 876, 882-83 (3d Cir. 1991)). The court observed, "[t]he choice to appear pro se is not a true choice for minors who under state law . . . cannot determine their own legal actions." *Johns*, 114 F.3d at 867. The court continued, "[i]t

FINDINGS & RECOMMENDATION - 6                                                       [RMD]

goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* However, the Ninth Circuit reversed the district court insofar as the district court dismissed the minor's claims with prejudice. *Id.* at 878. The court recognized that the minor has no capacity to sue in court, and should be given the opportunity to refile his claims when he reached the age of eighteen. *Id.*

Here, as in *Johns*, Graham is a non-attorney bringing suit on behalf of her minor children. Because Graham is neither an attorney herself nor represented by an attorney, she may not vicariously assert the legal rights of her children in this or any other case. Therefore, those claims should be dismissed, but without prejudice.

The children's minor status renders them incapable of bringing suit and incapable of representing themselves pro se. Thus, the statute of limitations could potentially run before they reach the age of majority – effectively denying them access to the justice system. The Ninth Circuit recognized this problem in *Johns*, and dismissed the plaintiff's son's claim without prejudice. The court observed:

> We note generally that state statutes of limitations often toll causes of action for minors. The limitations period for actions brought under . . . § 1983 should be taken from the statute governing actions for personal injuries in the state where the claim arose. However, we express no opinion on which causes of action brought by Casey, if any, are tolled until he reaches the age of majority because the issue is not before us.

*Johns*, 114 F.3d at 878 n.2 (citations omitted). Thus, the children's claims should be dismissed without prejudice to allow the children the opportunity to bring them at a later time, either as minors through legal counsel or as adults, pro se or through legal counsel.

The court does not decide here whether the children's claims will be time-barred when they reach the age of eighteen. It notes only that Oregon has a minor-tolling statute which may apply here to toll the statute of limitations until Sircharles and Savannah reach the age of majority. OR. REV. STAT. § 12.160; *see also Johnson v. Rly. Express Agency, Inc.*, 421 U.S. 454, 464-466 (1975) (finding that, where congress is silent in establishing a statute of limitations for federal civil claims, courts should apply state statutes of limitations and tolling statutes) (abrogated in part by 28 U.S.C. § 1658 as recognized by *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004)). Thus, the court should dismiss Graham's claims made on behalf of her children, but without prejudice so that Sircharles and Savannah can pursue their claims when they reach the age of majority or as minors through legal counsel.

## II. Graham's Individual Claims

Graham brings claims on her own behalf for (1) race discrimination; (2) IIED; (3) defamation; and (4) violation of the IDEA. Defendants argue she fails to adequately plead or satisfy the procedural prerequisites for asserting each claim. Specifically, they contend Graham: (1) does not adequately plead a claim for race discrimination; (2) cannot state a claim for defamation and IIED because she did not provide adequate notice under the Oregon Tort Claims Act (OTCA); (3) fails to adequately state a claim for defamation and IIED; and (4) failed to exhaust her administrative remedies under the IDEA.

### A. Race Discrimination

The First Amended Complaint contains three counts of "discrimination based on race." (Compl. at 21-25.) Defendants contend each of these fail as a matter of law because, despite the court's liberal treatment of her complaint, she fails to state a cognizable claim for race discrimination

under any federal or state statute. The court agrees.

Before the court addresses Defendants' substantive arguments, it notes that Graham cites in her complaint statutes that are unrelated to her allegations of discrimination by Rigler staff on the basis of race. Graham cites in her First Amended Complaint 42 U.S.C. § 1981 (prohibiting discrimination in making and enforcing contracts, bringing civil suit, and enjoyment of "the full and equal benefit of all laws and proceedings for the security of persons and property"); the Civil Rights Act of 1866 (related to contract rights, property rights, and court access); and OR. REV. STAT. § 659A.030 (addressing employment discrimination). These claims do not provide a basis upon which Graham may base her claims. Graham alleges no contractual relationship, no employment relationship, and no property right which Defendants have infringed through their conduct. Therefore, the court will construe Graham's claims as arising under Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1983.

   1. Title VI Claims

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Included in the definition of "program or activity" are "a local educational agency . . . , system of vocational education, or other school system." 42 U.S.C. § 2000d-4a(2)(B). To state a claim under Title VI, "plaintiffs must show that actions of the defendants had a discriminatory impact, and that defendants acted with an intent or purpose to discriminate based on plaintiffs' membership in a protected class." *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011)

Graham does not allege in the First Amended Complaint that any Defendant named in this case receives federal funding. Moreover, she does not allege she belongs to a protected class or explain which actions taken by school staff constitute racial discrimination. She alleges that, when she enrolled her children at Rigler, she "was immediately greeted in Spanish and handed a Spanish packet to register" Sircharles and Savannah. She also alleges the school failed to inform her of her children's behavioral problems in a timely manner.

These allegations cannot serve as a basis for a valid claim under Title VI. With respect to Graham's allegation that school officials did not notify Graham in a timely manner that her children were displaying behavioral problems, she does not allege in the complaint that this failure was on account of her race. In addition, attached as exhibits to the First Amended Complaint are several letters sent from Rigler to Graham explaining disciplinary action taken against Sircharles. These documents, which are referenced in the First Amended Complaint, demonstrate Graham received notice of Sircharles's disciplinary problems.

Graham's initial attempt to enroll her children does not serve as a predicate for a discrimination claim. Graham alleges that when she arrived at Rigler, staff greeted her in Spanish and provided her with Spanish-language forms with which to enroll the children. She alleges no other disparate treatment or prejudice. This allegation is not sufficient to state a claim under Title VI. First, although Graham alleges that she "possesses a multi-racial ancestry and appearance is regularly mistaken to have one or another of a wide variety of racial and national origins; for example, Chinese, Japanese, Hispanic, and Hawaiian," she is not Hispanic and did not represent to Rigler staff that she was Hispanic. Graham produces no support for the contention that one may state a cognizable race-discrimination claim where a defendant mistakes a plaintiff for a certain

ethnicity and greets that plaintiff in a language consistent with that mistaken assumption. Second, Graham does not demonstrate how she was prejudiced by the Defendants' conduct. Graham does not allege that, after she corrected the staff's mistaken belief regarding her race and language-of-preference, staff engaged in conduct that could be reasonably viewed as discriminatory. The Rigler staff acted presumptuously by treating her a certain way on account of her appearance, but did not treat Graham in a disparate manner based on her race or national origin. Therefore, Graham fails to state a claim under Title VI. Moreover, because Graham's Title VI claims cannot be cured, they should be dismissed with prejudice.

2. Claims under § 1983

Defendants contend Graham's discrimination claims should be dismissed to the extent they assert a claim under 42 U.S.C. § 1983 because Graham fails to adequately plead her claim. Section 1983 provides a civil cause of action for plaintiffs whose "rights, privileges, or immunities secured by the Constitution and laws" were violated by an individual acting under color of state law. 42 U.S.C. § 1983. In order to state a cognizable claim under § 1983, a plaintiff must identify a specific constitutional or statutory right which the defendants violated. *Id.*

Here, Graham fails to identify which of her "rights, privileges, or immunities" the Defendants infringed. Despite the court's obligation to liberally construe Graham's complaint, liberal interpretation of a pro se complaint may not supply essential elements of a claim that were not pleaded. *Ivey v. Bd. of Regents of Univ. Of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Thus, Graham's § 1983 claims should be dismissed. However, Defendants have not demonstrated that Graham's § 1983 claims are foreclosed as a matter of law, so Graham's claims should be dismissed without prejudice.

II. State Law Claims

In the First Amended Complaint, Graham pleads one count of IIED and alleges Defendants committed defamation.[3] Defendants argue both of these claims fail as a matter of law because Graham did not provide Defendants with a tort-claim notice as required under Oregon Law. Moreover, they claim she fails to plead the necessary elements of her state-law claims.

The Oregon Tort Claims Act ("OTCA") requires that individuals seeking to bring suit against a governmental body or an officer, employee, or agent of a governmental body must provide the defendants notice of that claim "within 180 days of the alleged loss or injury." OR. REV. STAT. § 30.275(2)(b). "Failure to give timely notice of a claim is fatal to a plaintiff's tort claim against a public body." *Denucci v. Henningsen,* 248 Or. App. 59, 66 (2012). Graham did not allege in the First Amended Complaint that she provided Defendants with a tort-claim notice. Therefore, Graham's state-law claims fail as a matter of law and should be dismissed. That said, it is not apparent from the face of Graham's complaint that she wholly failed to timely provide a tort-claim notice. Instead, she omitted any reference to notice she may or may not have given in anticipation for her suit against the state. Therefore, the court will review each of her claims to determine whether amendment is futile.

   *A. Intentional Infliction of Emotional Distress*

Defendants contend amendment would be futile because Graham fails to allege she was subject to any outrageous behavior by defendants. To state a claim for IIED, a Plaintiff must allege that "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the

---

[3]Graham does not include defamation among Counts I through IV of her complaint, but makes a number of references to Defendants' defamatory statements. Thus, the court will construe Graham's First Amended Complaint to state a claim for defamation.

FINDINGS & RECOMMENDATION - 12                                           [RMD]

defendant's actions caused the plaintiff severe emotional distress, and (3) the defendant's actions transgressed the bounds of socially tolerable conduct." *Schiele v. Montes*, 231 Or. App. 43, 48 (2009). According to Defendants, although Graham includes the key language of each element in her complaint, she "described very little about the actions taken by the named defendants in this case against planitiff herself (as opposed to her children)." (Def.'s Mot. To Dismiss at 14.) The court agrees with Defendants that Graham's IIED claim is insufficiently pleaded. However, that it is not grounds to conclude amendment of Graham's IIED claim is futile. Therefore, Graham's IIED claim should be dismissed without prejudice, and Graham allowed to replead facts sufficient to support her IIED claims if she can do so consistent with Federal Rule of Civil Procedure 11.

*B. Defamation*

Defendants argue the court should dismiss with prejudice Claimant's claim for defamation because she fails to state a claim. A Plaintiff states a successful claim for defamation by showing: "(1) the making of a defamatory statement; (2) publication of the defamatory material; (3) a resulting special harm, unless the statement is defamatory per se and therefore gives rise to presumptive special harm." *National union Fire Ins. Co. v. Starplex Corp.*, 220 Or. App. 560, 584 (2008). Defendants contend Graham fails to allege a specific statement Defendants' made about her. They argue that her allegation that Cunin "did indeed slander [her] name to a few people" is insufficient as a matter of law. However, prior to making that allegation, she alleges Defendants "[m]ade slanderous remarks about the capabilities of Jasmine Graham['s] . . . ability to parent her children . . . ." (First Am. Compl. at 5.) This is a specific statement regarding Graham that is arguably defamatory. Further, if Graham failed to articulate a specific defamatory statement, it is not grounds to deny her leave to amend.

Graham's claims nonetheless fail because she did not allege in her First Amended Complaint that she provided Defendants with timely tort-claim notice. However, at this stage the court cannot conclude as a matter of law that she failed to provide timely tort-claim notice. Thus, the court should dismiss her defamation claim without prejudice so she may replead facts to support her defamation claim if she can do so consistent with Rule 11.

*C. Individuals with Disabilities in Education Act*

Although Graham does not include an IDEA claim among her specifically articulated claims, she alleges throughout her complaint that Defendants violated her rights under the IDEA. Defendants contend Graham cannot state an IDEA claim because she did not exhaust her administrative remedies and has not demonstrated, let alone pleaded, that exhausting those remedies would be futile.

The IDEA is a comprehensive statutory scheme which confers disabled students substantive educational rights and provides financial grants to states that provide disabled students with a "free adequate public education." *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1166 (9th Cir. 2007). The IDEA imposes upon schools specific duties to disabled students and their parents including, among others, the duty to identify students with disabilities, the duty to evaluate those students, the duty to create an Individualized Education Plan ("IEP") for each student suffering from a disability, the duty to provide a substantively adequate education, and the duty to provide for parental involvement in the educational process. 20 U.S.C. §§ 1401, 1414-1415. "When parents are unsatisfied with the adequacy of the education provided, the construction of the IEP, or some related matter, IDEA provides procedural recourse," including filing a complaint in a court of law. *Kutasi*, 494 F.3d at 1166. However, before parents may seek legal recourse for IDEA violations,

they must first exhaust their administrative remedies, including filing a request for an administrative "due-process" hearing. *Id.*, 20 U.S.C. § 1415(l).

The only circumstance excusing the requirement to exhaust administrative remedies before seeking redress through the judicial system is futility; when seeking administrative review would be futile or the administrative body cannot provide an adequate remedy. *Kutasi*, 494 F.3d at 1168. Administrative relief is futile, for example, if the relief sought cannot legally be granted by an administrative body. *Id.* "On the other hand, if the injury could be redressed 'to any degree' by the IDEA's administrative procedures – or if the IDEA's ability to remedy an injury is unclear – then exhaustion is required." *Id.* The "party that alleges futility . . . of IDEA administrative procedures bears the burden of proof." *Id.*

Here, Graham does not allege that she exhausted her administrative remedies and she does not allege that seeking administrative remedies would be futile. Because she fails to state a necessary element of an IDEA claim, the court should dismiss her claim. However, Graham's failure to adequately plead administrative exhaustion in this instance does not render her IDEA claim futile. Therefore, the court should dismiss this claim without prejudice.

### *Conclusion*

For the aforementioned reasons, the court should GRANT Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 60). All of Graham's claims should be dismissed without prejudice, with the exception of her Title VI claim, which is futile when predicated on the facts alleged in the First Amended Complaint. Moreover, Graham's children's claims should be dismissed without prejudice so that they may pursue their claims as minors when represented by counsel or pro se when they reach the age of majority.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due February 23, 2015. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 9th day of February 2015.

JOHN V. ACOSTA
United States Magistrate Judge